RECEIVED-CLERK
**UNITED STATES DISTRICT COURT** U.S. DISTRICT COURT
**FOR THE DISTRICT OF NEWARK, NEW JERSEY**

2005 AUG 25  P 3: 29

---

Plaintiff (s)

ELEANOR M. COONEY, As Executrix
of the Estate of Daniel T. Cooney, Jr.,                    DOCKET NO.: 04-CV-1272 (JLL)
Deceased, and ELEANOR M. COONEY,
ELEANOR SCHIANO, HELEN E. COONEY
MUELLER, DANIEL T. COONEY, III and
ROBERT COONEY, individually,

        vs.

Defendant (s)

ROBERT E. BOOTH, JR., M.D., ARTHUR R.          *CIVIL ACTION*
BARTOLOZZI, M.D., and 3B ORTHOPAEDICS,
P.C./PENN ORTHOPAEDICS and ROBERT E.
BOOTH, JR., M.D., ARTHUR R. BARTOLOZZI,
M.D., 3B ORTHOPAEDICS, P.C./PENN
ORTHOPAEDICS, Personally.

                                         JURY TRIAL DEMAND

---

## BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY
## JUDGMENT AND IN OPPOSITION TO DEFENDANTS' MOTION.

                                  **Helen E. Cooney Mueller, Esq.**
                                  **Attorney for Plaintiffs**
                                  **11 Susan Avenue**
                                  **Wayne, New Jersey 07470**
                                  **(973) 633-8021**
                                  **helenelmueller@yahoo.com**

**On the Brief: Helen E. Cooney Mueller, Esq.**

# TABLE OF CONTENTS

PAGE No.

I. Preliminary Statement                                    4

II. Statement of Facts/Procedural History                  4

III. Legal Argument
    Defendants' Motion for Summary Judgment must be
    denied as there is no Statement of Undisputed Facts
    other then procedural history.  Defendants erroneously
    rely on Pennsylvania Law.  Plaintiffs' Motion for
    Summary Judgment must be granted as there is no
    dispute as to Statement of Undisputed Facts and based
    on law Plaintiffs' Motion must be granted.            14

    New Jersey Law to be applied                          15

    Statute of Limitations                                16

    Prior Action                                          21

    Standard for Fraud                                    22

    Independent Action for Legal Fraud                    23

    Independent Action for Equitable Fraud R. 60 (b)      23

    Res Judicata                                          26

    Elements of Fraud (Legal and Equitable)               29

    Summary of Facts                                      30

    Elements of Fraud                                     34

IV. Conclusion                                             39

## TABLE OF CITATIONS- Cases

Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986)  15
Arab African International Bank v. Jonathan I. Epstein, 958 F.2d 532 (3rd Cir.1992)  27
Armel v. Crewick, 71 N.J. Super 282, 154 A.2d 788 (1959)  22
Ayers v. Morgan, 397 Pa. 282, 154 A.2d 788 (1959)  17
Batka v. Liberty Mutual Fire Ins. Co., 704 F.2d 684 (3rd Cir. 1983)  22
Carr v. Dist. of Columbia, 646 F.2d 339 (App. D.C.1980)  24
City Check Cashing, Inc. v. Manufacturers Hanover Trust, 166 N.J. 49 (2001)  34
Cochran v. GAF, 542 Pa. 210, 666 A.2d 245, 1995 Pa. LEXIS 717 (1995)  17
Connelly v. Weisfeld, 142 N.J. Eq. 406 (E & A 1948)  22
DiSabatino v. U.S. Fidelity & Guaranty Company, 635 F. Supp. 350(D.C.Del.1986)  39
Fischetteo Paper Mill Supply, Inc. v. Quiqley, 3 N.J. 149 (1949)  22
Gallagher v. New England Mut. Life Ins. Co. of Boston, 33 N.J. Super.
128, 109 A.2d 457 (A.D. 1954, affirmed 19 N.J. 14, 114 A.2d 857 (1954)  36
Goland v. Center Intelligence Agency, 607 F.2d 339 (1978)  24
Groshen Lithe Inc. v. Kohls, 582 F. Supp. 1561 (S.D.N.Y. 1983)  15,29
Hagen v. Gallerano, 66 N.J. Super. 319, 160 A.2d 186 (A.D. 1961)  39
Hazel-Atlas Glass Co v. Hartford Empire, 322 U.S. 238 (1944)  27
Heaver v. Uniroyal, 63 N.J. 130, 305 A.2d 412 (1973)  16
Henry v. Richardon-Merrell, 508 F.2d 39 (3rd Cir. 1975)  16
Jewish Center of Sussex Cty v. Whale, 86 N.J. 619, 432 A.2d 521 (1981)  22,35
L-Tec Elec. Corp. v. Cougar Elec. Org., Inc.1988 F.3d 85 (2nd Cir. 1988)  28
McCall v. Scott, 239 F.3d 808 (6th Cir. 2001)  29,30
Melik v. Sarahson, 49 N.J. 226, 229 A.2d 625 (1967)  16
Nappe v. Anschelewitz, 97 N.J. 37, 477 A.2d 1224 (1984)  39
Nobrega v. Edison Glen Associates, 327 N.J. Super. 414, 754 A.2d 1213, modified &
remanded 167 N.J. 520, 772 A.2d 368 (2000)  35
Perna v. Pirozzi, 92 N.J. 446, 457 A.2d 431 (1983)  30
Pocono Int'l Raceway v. Pocono Produce, 503 Pa. 80,1983 Pa. LEXIS 756 (1983)  17
Pfau v. Trent Aluminum, 55 N.J. 511, 263 A.2d 129 (1970)  16
Rosen v. Communication Services Group, Inc. 155 F. Supp 310 (2001)  29,30
Roth v. LaSociete, 2003 Mo. Ap. Lexis 1562,120 S.W.3d 764(W.D. Mo. 2003)  39
Salvaara v. Jackson Nat. Life Ins. Co, 66 F. Supp.2d 593 (D.C.N.J. 1999)  34
So.Cr.Overseas Inc. v Wah Kwong Ship Gp Ltd.,181 F.3d 410 (3rd Cir. 1999)  16
Strawn v. Canuso, 271 N.J. Super. 88, 638 A.2d 141 (A.D. 1994)  35
United States v. Panza, 750 F.2d 1141 (2nd Cir. 1984)  15,29
U.S. v. Throckmorton, 98 U.S. 61 (1878)  24
Violas v. General Motors Corp, 170 F.3d 367 (3rd Cir. 1999)  35

Rules, Statutes/Regulations
F.R.C.P. 60 (b)  4, 16,26,27
45 C.P.R. 415.170 et seq.  11,33
N.J.S.A. 2A:14-1  16
18 U.S.C. 1621, 1623  7,18,32

## I. PRELIMINARY STATEMENT

Plaintiffs have brought action for legal and equitable fraud seeking monetary damages and/or to set aside judgments. In accordance with law, plaintiffs may bring an independent action for legal fraud seeking monetary damages and may also bring a F.R.C.P. 60 (b) independent action for fraud to set aside the judgment. R. 60 (b) is clear that if time for motion to set aside judgment has expired, an independent action for fraud to set aside judgment may be brought. Advisory Notes to R. 60 (b) are also clear that independent action for fraud may or may not be brought in the court where judgment was rendered.

Federal law requires forum state's choice of law rules be applied. In New Jersey, standard is "governmental interest." Since plaintiffs are residents of New Jersey and defendants have office in New Jersey, New Jersey has an interest in seeing that their fraud statutes are implemented to protect their citizens. New Jersey law must be applied. Statute of limitations for fraud in New Jersey is six years. Plaintiffs are well within the statute of limitations. Failing to disclose a pending Medicare Fraud investigation constitutes an action for fraud. In res judicata determinations, federal courts follow Restatement of Judgments (Second), sec. 27. Res judicata does not apply when there was no determination on the merits. The Third Circuit held plaintiffs were out of time as to motion to set aside judgment for fraud and thus there was no decision on merits, res judicata does not apply, and plaintiffs may proceed with independent action for fraud. Plaintiffs do not pursue a fraud on the court action as Third Circuit held that while plaintiffs' motion for fraud on the court was timely it was without merit.

## II. STATEMENT OF FACTS/PROCEDURAL HISTORY

In January, 1997, Daniel T. Cooney, Jr., deceased, received brochure in mail as to expertise of defendant, Robert E. Booth, Jr., M.D., in knee replacement

4

surgery.  Cooney met with Booth in April, 1997 and Booth informed Cooney he would personally perform the knee replacement surgery, Appendix p. 19-20.  On February 26, 1998, knee replacement surgery was performed at Graduate Hospital in Pennsylvania.  During knee replacement surgery, Cooney's artery was injured/severed creating intimal flap (vascular injury), Appendix p.56-59. Immediately following surgery, Cooney's cardiologist noticed Cooney's foot was cold, purple, and pulseless, and contacted vascular surgeon, Mark Mantell, M.D. Vascular surgery was performed for approximately eight hours in effort to repair vascular injury, Appendix 56-59.  Cooney never recovered from vascular injury and died at Graduate Hospital on April 29, 1998.

On February 26, 1998, plaintiff family members and other patient family members were told to wait in waiting room for telephone call from surgeon. Neither defendant, Robert E. Booth, Jr., M.D. nor defendant, Arthur R. Bartolozzi, M.D., or anyone else contacted plaintiffs on said date.  At 6:00 p.m., the only ones left in waiting room, plaintiffs located intern who brought them to recovery room staff who informed plaintiffs that Cooney was fine and doing well-- but that they could not see him.  Plaintiffs returned to New Jersey and call recovery room staff who informed plaintiffs Cooney had "blood clot," and to stop calling as was not serious.  In early morning hours of February 27th, Dr. Mark Mantell, vascular surgeon, called plaintiffs and informed them he operated on Cooney for eight (8) hours in attempt to repair severed artery -- **condition critical,** Appendix 56-59.

On February 27, 1998, plaintiffs ran into Booth. Booth falsely informed plaintiffs Cooney suffered from "blood clot," despite fact he had already spoken with Mantell who informed Booth that Cooney suffered from vascular injury during knee replacement surgery, Appendix 56-59 (intimal flap is vascular injury). Mantell specifically states: "No thrombus [blood clot] seen." Appendix p. 56.

Plaintiffs commenced an action in this Court in November, 1999, Appendix p. 90-113. Plaintiffs alleged medical malpractice, Count One; and battery (Booth did not perform Cooney's knee replacement surgery as he had promised), Count Two; and fraud in that defendants purposefully concealed true nature of Cooney's condition, Count Three, ie. informed plaintiffs Cooney suffered from blood clot when there was a vascular injury that occurred during surgery. Matter was transferred to Eastern District of Pennsylvania. Defendants eventually agreed to vascular injury and thus case proceeded only as to medical malpractice/battery.

All medical records reflected defendant, Arthur R. Bartolozzi, M.D. as Cooney's surgeon -- Intraopertive report, Appendix p. 11-12; Operating schedule (Cooney Id 782873) Appendix p. 2; and bill submitted to Medicare by Bartolozzi, Appendix p. 1. At deposition, Booth testified that he (Booth) was present for the critical portions of Cooney's surgery, Appendix p. 53-55 at 53. **Booth's testimony changed at trial, see below.** In his deposition, Bartolozzi denied performing Cooney's surgery and testified Booth "is responsible" for **all portions of surgery (soft tissue, ligament balancing, bony cuts, application of trial and permanent prosthesis),** Appendix p. 17-18 at p. 18. Despite fact Bartolozzi was surgeon of record, he was dismissed by trial court. This dramatically altered plaintiffs' case as surgeon of record (Bartolozzi) was dismissed.

Defendants brought Motion in Limine to preclude any reference to Medicare Fraud versus defendants, Appendix 32-36. Plaintiffs had heard rumor from former attorney, Louis Fine, who heard from former defendant, Mark Mantell, that Booth was being investigated for Medicare Fraud for having assistants perform surgeries. See Defendants' Appendix Mueller deposition.

**First,** Mantell denied stating same. **Second,** plaintiffs had no idea if there really was a Medicare Fraud investigation and what it involved if there was such

6

an investigation. Further, to plaintiffs -- "assistants" meant that **Bartolozzi performed Cooney's surgery.** Indeed, defendants own Motion for Summary Judgment, paragraph 3, claims and specifically states: "Booth was **assisted** by co-defendant, Bartolozzi." **Third,** prior to trial plaintiffs contacted Medicare and Eastern District of Pennsylvania to verify same but neither entity had any information regarding Medicare Fraud investigation versus Booth. **Fourth,** plaintiffs could never verify the Medicare Fraud investigation versus Booth that was pending during trial as same was **sealed/confidential,** as required by law, and **only defendants had access to same.** **Fifth,** information remains sealed as of today's date -- except for Medicare Fraud Complaint/Settlement and Integrity Agreements which were not filed until August, 2001, Appendix 64-67 and 69-82 - - months after plaintiffs' trial. **Sixth,** plaintiffs justifiably relied on false representations made in defendants' Motion in Limine which falsely represented to federal court and plaintiffs that **any reference to medicare fraud was irrelevant to plaintiffs' case and would divert jury's attention from the true issues.** **Seventh,** in his deposition Booth denied any pending federal actions, denied any criminal actions -- only civil and only in Commonwealth [State of Pennsylvania], Appendix 53-55 at p. 55. Federal Perjury statute, 18 U.S.C. 1621 was expanded by sec. 1623 which changes intent from willfully offering false testimony to merely having knowledge that testimony is false. **Eighth,** plaintiffs' former attorney, Frederick Klepp, Esq. will testify that he knew nothing about a pending Medicare Fraud investigation versus Booth. **Ninth,** based on fact that the Medicare Fraud investigation was, in accordance with the law, **confidential and under seal** -- it is difficult to even comprehend defendants' assertion that somehow plaintiffs knew about the Medicare Fraud investigation -- but that defendants did not know about

same.  Indeed, the defendants **were the only ones privy to the Medicare Fraud investigation.**

At trial, Booth changed his deposition testimony.  Booth testified that Bartolozzi was surgeon, Appendix p. 19-31a. Q. And does that document reflect the name of the surgeon? A. Yes. Q. Who is it? A. The name listed here is Dr. Bartolozzi, first assistant Dr. McHugh. Appendix p. 31a.  Booth also testified Bartolozzi was an expert in soft tissue and ligament balancing, that Bartolozzi was "gift" to him, and that he (Booth) no longer performs that portion of surgery, Booth also testified that "soft tissue" and "ligament balancing" were the most **critical** portions of knee replacement surgery, Appendix p. 21-25.

Booth testified that he entered Cooney's surgery at bone cutting -- after soft tissue and ligament balancing had been completed-- and that he assisted Bartolozzi in performing the bone cutting portion of surgery and that he (Booth) left when the permanent prosthesis was being applied, Appendix p. 26-27, 30.  Bartolozzi, however, denies participation **in any portion of surgery** except commencement and conclusion, Appendix p. 18-19 at 18.

.  Jury returned verdict in favor of defendants.  Booth did not dispute he informed Cooney he (Booth) would perform Cooney's surgery, Appendix p. 19-20. While the consent form left the identity of surgeon blank -- it then listed either Booth or Bartolozzi as possible surgeon for Cooney.  Jury thus conclude that no battery occurred.  Plaintiffs appealed battery jury instructions (surgeon who authorizes another surgeon to perform surgery may be held liable for battery, Grabowski, supra).  Third Circuit affirmed judgment stating: Bartolozzi "performed the bulk of the surgery," Appendix 46-52 at p. 46.

Following appeal, plaintiffs learned defendants had committed fraud in that critical evidence relating to plaintiffs' battery claim had indeed been fraudulently

8

and deliberately concealed from plaintiffs. Medical Fraud Complaint, Appendix p.

69-82 and portion of Settlement/Integrity Agreements, Appendix p. 64-67, --

which were **not filed in federal Court until August, 2001**, several months after

plaintiffs' trial.  In their complaint, Plaintiffs assert that they did not discover this

evidence until May, 2002, Appendix p. 62 (actual date is June, 2002 -- bottom of

document), and in fact did not even obtain Medicare Fraud Complaint until July,

2002, Appendix p. 68 - letter from Eastern District of Pennsylvania; and

Settlement/Integrity Agreements in July, 2002, Appendix p. 63-- envelope from

law firm F& F in Washington, D.C..

This evidence revealed that prior to and at the time of the trial, defendant,

Booth, was being investigated by Office of Inspector General **for having residents**

**perform surgeries without the presence of Booth,** Appendix p. 69-82. This

evidence was pivotal to plaintiffs' battery claim and was fraudulently, deliberately,

and purposefully concealed from the plaintiffs. In fact, **based on defendants' false**

**representations, see above, plaintiffs voluntarily dismissed the only resident,**

**Dennis McHugh, D.O, listed on Cooney's Intraoperative Report,** Appendix p

11-12.  Further, the consent form, Appendix 15-16, **did not authorize residents to**

**perform surgery.**  In his deposition, McHugh cannot recall who performed

Cooney's surgery, Appendix p. 37-43 -- but presents his note that designates

Bartolozzi as surgeon, Appendix p. 44.  McHugh denies that he (McHugh)

performed Cooney's surgery, Appendix p. 37-43.

The medicare fraud investigation was critical to plaintiffs' claims versus

defendants. Defendants fraudulently and purposefully concealed this information

from plaintiffs.  The medical documents designating Bartolozzi as surgeon are

false and fraudulent, as neither Booth (based on his own trial testimony and all

medical documents) nor Bartolozzi (based on his deposition) performed the critical

portions of Cooney's surgery.  While Booth claims he entered Cooney's surgery after the soft tissue and ligament balancing had been performed, that he assisted Bartolozzi in the bone cutting, and left when Bartolozzi was cementing the permanent prosthesis, **Bartolozzi is clear that he did not perform any of the critical portions of Cooney's surgery and that Booth "is responsible for all portions including soft tissue, ligament balancing and application of permanent prosthesis,** Appendix p. 17-18.

   There is nothing in medical record to prove Booth/Bartolozzi were present in Cooney's operating room.  Defendants purposefully concealed the Medicare Fraud investigation from plaintiffs and deliberately induced plaintiffs to falsely believe Bartolozzi had performed Cooney's surgery as there was no other surgeon listed on any medical documentation.  Further, based on defendants' false representations, plaintiffs  voluntarily dismissed resident, McHugh.

   This evidence, combined with additional evidence, reveals that **neither Booth nor Bartolozzi performed Cooney's knee replacement surgery but rather surgery was performed by resident, McHugh, or some other individual unlicensed to perform surgery.**

   In the Medicare Fraud complaint,  it is alleged Booth had surgeon's notes for the rooms he (Booth) actually performed surgery -- but, in violation of the law, **there were no surgeon's notes for the other patients**, Appendix p. 69-82.   In their demand for documents, plaintiffs' requested the surgeon's notes for Cooney.  The defendants have **denied the existence of surgeons' notes for any of the twenty-six surgeries on February 26, 1998,** Appendix p. 4. The Operating Report, Appendix p. 13-14, is not considered personal documentation/surgeon's notes as Booth testified that it is simply a **computer generated form template** Appendix p.53-55 at p. 53, -- and is same for every patient.  Thus, it was not

10

prepared during surgery.  Further, Cooney's actual blood loss on February 26,

1998 was 2500 cc, Appendix 56-59, and not 50 cc as reported on form template,

Appendix p. 13-14 (tourniquet time listed is also estimate).  Further, the attending

physician is not identified on the report.  Both Booth and Bartolozzi are listed.  It

is Bartolozzi who submitted the bill to Medicare, Appendix p. 1, and listed as

surgeon on medical documents, Appendix p. 1, 2, 11-12, and is thus considered

the "attending physician."  Bartolozzi, however, did not perform the surgery.

The Medicare Fraud complaint is for 1995 to July, 1997, when

defendants were at Pennsylvania Hospital.  Defendants left Pennsylvania Hospital

in July, 1997 and transferred to Graduate/Allegheny Hospital.  Defendants

returned to Pennsylvania Hospital one year later (1998). See Defendants'

Appendix - Philadelphia Business Journal.  Thus, move to Graduate Hospital -

ceased further Medicare investigation of Booth at Pennsylvania.

Once at Graduate Hospital, defendants change strategy -- and now submit a

fictitious surgeon (Bartolozzi) to Medicare billing in attempt to avoid requirement

of personal documentation/surgeon's notes during operation.  Bartolozzi testified

that "he does not know why his (Bartolozzi) name is on the medical documents,"

Appendix 17-18 at p. 18.  The plan well orchestrated with intent to defraud.

Federal law, 42 CPR 415.170, et seq, requires that when there are

multiple/overlapped scheduled surgeries that the presence of surgeon during

critical portions of surgery be **documented in the medical record.**  Further, while

resident may open or close, surgeon cannot leave to commence another surgery --

but must be immediately available to return to former surgery.  There were 26

surgeries on 2/26/98 (18 patients).  **Since Bartolozzi testified he did not perform**

**Cooney's surgery and does not perform critical portions altogether -- then**

11

**Booth had to perform a minimum of 17 multiple/overlapping operations --
both his (Booth) and Bartolozzi designated surgeries, see Appendix p. 2.**

The second Operating Schedule, Appendix p. 3, shows that there were six
operating room designated for 3B Orthopaedics (Booth, Bartolozzi, and David
Nazarian).  The scheduled times show multiple/overlapping surgeries scheduled
for February 26, 1998, eg. several scheduled at 7:00 a.m., 9:00 a.m., 11:00 a.m,
etc.  Further, Booth testified in his deposition that he left Cooney's surgery for
another surgery, Appendix p. 53-55 at p. 54. Since bill, Appendix p. 1, was
submitted to Medicare by Bartolozzi, defendants were required to follow law
mandating documentation in medical record of surgeon's presence during critical
portions surgery.  Defendants deny existence of surgeon's notes, Appendix p. 4.
**There is absolutely nothing in the medical record documenting the presence of
either Booth or Bartolozzi during the critical portions of Cooney's surgery.**

Thus, similar to the Medicare Fraud complaint, there is absolutely no
evidence that either Booth or Bartolozzi were present in Cooney's operating room.
McHugh testified as the similar room pattern as alleged in Medicare Fraud
Complaint, Appendix p. 37-43 at p. 41-42.

Plaintiffs requested defendants to produce **redacted top portion of the
Intraoperative Reports for the 26 surgeries on 2/26/98 indicating the surgeon,
first assistant, time surgery commenced and concluded.**  Defendants did not
produce but rather contacted Graduate Hospital who required subpoena and
identity of patients.  Plaintiffs provided same.  Graduate Hospital and defendents
then stated plaintiffs were in violation of federal law in that **patients had to be
notified** of plaintiffs' request for redacted portion of Intraoperative Report.
Plaintiffs agreed to notify patients but were denied access to patients' addresses by
defendants and Graduate Hospital, Appendix p. 88-89. Plaintiffs filed order to

12

show cause which was granted. Graduate Hospital filed motion for protective order -- now requiring the exact opposite, ie. plaintiffs **could not provide patients or anyone else** (presumably OIG) with copies of documentation. Plaintiffs agreed to Protective Order but are awaiting said Order from this Court.  Once plaintiffs' receive Protective Order they will obtain the redacted Intraoperative reports and file same with this Court if the within Motion to supplement Appendix is granted.

In accordance with the law, **failing to disclose a pending Medicare Fraud investigation is fraud,** see Legal Argument.  In June, 2002, plaintiffs brought Motion for Fraud **and** Fraud on the Court which was denied by trial court in January, 2003 stating plaintiffs were beyond one year motion R. 60 (b) statute of limitations.  Plaintiffs brought Motion for Reconsideration and Recusal (based on relationship between Sen. Arlen Specter and trial judge and relationship between Sen. Specter's son, Shanin Specter, whose law firm partner member of federal judicial nominating committee, and his (Shanin) extremely close relationship with defendant, Bartolozzi). In June, 2003, the trial court judge denied both motions. Plaintiffs appealed to Third Circuit.

The Third Circuit, only affirmed trial judge in that plaintiffs were **out of time to file a motion to set aside the judgment.** In accordance with law, this specifically **paved the way for plaintiffs to file their independent action for fraud to set aside the judgment as the Court was well aware that R. 60 (b) specifically states that an untimely motion to set aside judgment does not preclude filing an independent action for "fraud" to set aside the judgment.** The Third Circuit also held plaintiffs' motion for **fraud on the court,** as opposed to **fraud,** was in fact timely (due to savings clause and contrary to trial court) -- and ruled, without explanation, that it was without merit.  Thus, plaintiffs' are not precluded from filing independent action for fraud but are precluded from filing an

independent action for **fraud on the court**.  Plaintiffs' complaint does not allege
"fraud on the court" -- it only alleges equitable "fraud" under R. 60 (b) seeking to
set aside judgment and legal fraud, similar to Medicare Fraud complaint, seeking
monetary damages for fraud based on New Jersey law. **Thus, res judicata does
not and cannot apply to plaintiffs' within action.**

Defendants informed this Court they had MIIX Insurance and requested
Court stay matter in accordance with state court rehabilitation action regarding
MIIX Insurance.  It appears, however, defendants only had MIIX insurance in
capacity employees of Graduate Hospital, Ie., Booth was Director of Resident
Training and Education, see documents previously submitted to Court.  Thus,
defendants may very well concede that residents, or other individuals unlicensed to
perform surgery, performed Cooney's surgery as they rely on MIIX insurance
policy rather than their own surgical medical malpractice insurance.

### III. LEGAL ARGUMENT

**Defendants' Motion for Summary Judgment must be denied as there is
no Statement of Undisputed Facts other then procedural history. Defendants
erroneously rely on Pennsylvania Law.  Plaintiffs' Motion for Summary
Judgment must be granted as there is no dispute as to Statement of
Undisputed Facts and based on law Plaintiffs' Motion must be granted.**

Pursuant to F.R.C.P. 56 and Local Rule 56.1, each party must submit a
Statement of Undisputed Facts. Defendants did not submit a Statement of
Undisputed Facts.  Three days after filing Motion, defendants submit letter to
Court stating that paragraphs 1 through 32 in defendants' **Motion** for Summary
Judgment constitute defendants' Statement of Undisputed facts.  The referenced
paragraphs, 1 through 32, however, only present erroneous or incomplete
**procedural history** rather than undisputed facts. Moreover, defendants do not

14

properly quote and/or leave out significant portions of testimony and do not refer to documents.   Defendants erroneously rely on Pennsylvania law.

Moreover, an appropriate grant of summary judgment requires the absence of any material issue of fact.  In making this determination, all inferences and ambiguities must be resolved in favor of the opposing party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S.Ct. 2505, 911 L.Ed. 2d 202 (1986).  Plaintiffs have submitted Statement of Undisputed Facts that at the very least presents material issues of fact.  Defendants' Motion must be denied.

On the other hand, plaintiffs' Statement of Undisputed Facts have presented clear and convincing evidence that defendants defrauded and intended to defraud plaintiffs.  Plaintiffs' Motion for Summary Judgment must be granted.  At the very least, plaintiffs have presented clear and convincing evidence that material issues of fact exist and "reasonable minds" may differ thus entitling case proceed to jury. While plaintiffs have presented direct proof of fraud, the issue of intent in a fraud case is rarely susceptible of direct proof.  Thus, fraud ordinarily must be established by circumstantial evidence and the legitimate inferences arising therefrom. Groshen Lithe Inc. v. Kohls, 582 F. Supp. 1561 (S.D.N.Y. 1983); United States v. Panza, 750 F.2d 1141 (2nd Cir. 1984). Plaintiffs have presented sufficient undisputed facts to warrant Motion for Summary Judgment in favor of plaintiffs or the case proceed to jury.

Plaintiffs bring independent legal action for fraud for monetary damages and independent equitable action for fraud to set aside March, 2001 judgments pursuant to F.R.C.P. 60 (b). Plaintiffs are within statute of limitations, below.

## NEW JERSEY LAW TO BE APPLIED

Pursuant to the law, a federal court sitting in diversity must look to forum state law for determination as to which state law applies. Henry v. Richardon-

Merrell, Inc., 508 F.2d 28 (3rd Cir. 1975).  Plaintiffs' action is based on diversity
and federal question (Federal Rules of Civil Procedure, R. 60 (b).  In Melik v.
Sarahson, 49 N.J. 226, 229 A.2d 625 (1967) and Pfau v. Trent Aluminum
Company, 55 N.J. 511, 263 A.2d 129 (1970), New Jersey courts placed in effect
the governmental interest approach to the choice of law questions. This approach
requires a two-step analysis (1) the governmental polices evidenced by the laws of
each related jurisdiction and (2) the factual contracts between the parties and each
related jurisdiction.  This approach applies to both substantive and procedural
(statute of limitations) law, Heavner v. Uniroyal, Inc. 63 N.J. 130, 305 A.2d 412
(1973). Here, New Jersey has an interest in protecting its residents from fraud and
has enacted fraud statutes, above, to protect its residents.  Second, while mere
incorporation in New Jersey is not sufficient to warrant the application of New
Jersey law, the fact that all plaintiffs are residents of New Jersey and defendants
have sufficient contact with New Jersey (defendants have office in Mount Laurel,
New Jersey, venue established in November 15, 2004 decision), there is sufficient
contact between parties to warrant application of both New Jersey substantive and
procedural law. Thus, New Jersey law applies to procedural and substantive law.

## STATUTE OF LIMITATIONS

Statute of limitations for fraud is six (6) years in New Jersey, N.J.S.A.
2A:14-1.  Under New Jersey law, when gist of action is fraud concealed from the
plaintiff, the statute of limitations begins to run on discovery of the wrong or of
facts that reasonably should lead plaintiff to inquire into the fraud. Southern Cross
Overseas Agencies, Inc. v. Wah Kwong Shipping Group Ltd., 181 F.3d 410 (3rd
Cir. 1999).  The plaintiffs are well within New Jersey statute of limitations.  The
plaintiffs assert in their complaint fraud in that defendants failed to disclose a
Medicare Fraud investigation versus Booth for having residents perform surgeries

without the presence of Booth was discovered in May, 2002. The fraud was

actually discovered in June, 2002, see Appendix p. 62 - Internet documented

dated June, 2002. Plaintiffs did not even obtain copies of the Medicare Fraud

Complaint and Settlement/Integrity Agreements until July, 2002 - Appendix p. 68;

and envelope from Washington, D.C. law firm enclosing Settlement/Integrity

Agreements - dated July, 2002. Plaintiffs brought medical malpractice/battery

action versus defendants in November, 1999. The trial was in March, 2001.

Whatever date is utilized by this Court -- the plaintiffs are well within the six (6)

statute of limitations. Medicare Fraud investigation versus Booth was pending

prior to and during Cooney trial for medical malpractice/battery. Moreover, the

Medicare Fraud investigation versus Booth for having residents perform surgeries

without the presence of Booth was critical to plaintiffs' battery claims.

 Even assuming that Pennsylvania law applies, plaintiffs are also within the

two year discovery period for Pennsylvania fraud statute of limitations. The

leading Pennsylvania case on the "discovery rule" is <u>Ayers v. Morgan</u>, 397 Pa.

282, 154 A.2d 788 (1959), where the Pennsylvania Supreme Court stated that "**the

plaintiff is not prevented from filing suit after the statute of limitations has

expired, if fraud has intervened."** <u>Id.</u> 157 A.2d at 792 (emphasis added).

Further, when reasonable minds could differ as to when the plaintiff should have

been aware that he or she suffered an injury, the question must go to a jury.

<u>Cochran v. GAF</u>, 542 Pa. 210, 666 A.2d 245, 1995 Pa. LEXIS 717 (1995). Finally,

in <u>Pocono Int'l Raceway, Inc. v. Pocono Produce, Inc.</u>, 503, Pa. 80, 468 A.2d 468,

1983 Pa. LEXIS 756 (1983), the court held that the proper situation for use of the

discovery rule to toll the statute of limitations **arises from the inability of the

injured to investigate or confirm the injury or its cause.**

Here, plaintiffs did not discover the fraud by defendants until June, 2002, when they were made aware that during plaintiffs' initial trial a Medicare Fraud investigation had been pending versus defendant, Booth, for having residents perform surgeries without presence of surgeon. The Medicare Fraud Complaint and Settlement/Integrity Agreements were not filed in the Eastern District for Pennsylvania until August, 2001, Appendix p. 69-82 -- months after Cooney trial. Plaintiffs discovered the Medicare Fraud Complaint/Agreements in June, 2002, Appendix p. 62. Plaintiffs obtained a copy of the settlement/integrity agreement from a Washington, D.C. law firm in June, 2002, Appendix p. 63 - envelope; and letter enclosing copy of Medicare Fraud Complaint from U.S. District for Eastern District of Pennsylvania, Appendix p. 68.

Defendants' assertion that plaintiffs could have obtained information regarding Medicare Fraud investigation versus Booth in September, 2001, after Complaint was filed in federal court from the **Philadelphia Business Journal** is absurd. Plaintiffs are not residents of Pennsylvania and have no access to the Philadelphia Business Journal. Moreover, by stating same, defendants acknowledge that the Medicare Fraud investigation was under **seal/confidential** at the time of trial -- that only defendants had access to same -- and that it was not made public until August, 2001 when the Complaint/Agreements were filed in district court or September, 2001-- published in Philadelphia Business Journal.

The pending Medicare Fraud investigation versus Booth was fraudulently and purposefully concealed from plaintiffs during trial. Booth lied in deposition as to any pending Medicare Fraud investigations, Appendix p. 53-55 at p.55, and denied criminal actions (only stated civil and Medicare Fraud investigation was both civil and criminal), and denied federal actions -- stating only Commonwealth (State of Pennsylvania). Federal perjury statute, 18 U.S.C. 1621 was expanded by

18

sec. 1623 which changed definition of intent from willfully offering false testimony to merely having knowledge that testimony is false.

Defendants' assertion that Booth at deposition did not understand Klepp's questions is also absurd.  Booth **knew** that he was being investigated for Medicare Fraud.  Plaintiffs have recently learned from Office of Inspector General that investigation commenced April, 1997.  Indeed, Booth left Pennsylvania Hospital in July, 1997 and went to Graduate Hospital -- thereby ceasing any further investigation at Pennsylvania Hospital, see defendants' Appendix - Philadelphia Business Journal (Booth returned to Pennsylvania Hospital one year later in 1998).

Booth also **knew** that the investigation was under **seal/confidential** in accordance with law -- and thus plaintiffs **could never** verify same.  Indeed, plaintiffs had contacted Medicare and Eastern District of Pennsylvania prior to trial and were informed that those offices knew nothing about a Medicare Fraud investigation versus Booth. Booth also **knew** that he could not "settle" the Medicare Fraud Complaint prior to Cooney trial as settlement "unseals" the case -- at least in terms of release of Complaint/Settlement. Indeed, the case was not settled until August, 2001 -- after Cooney trial, Appendix p. 64-67.

Defendants' additional assertion that plaintiffs somehow knew about the Medicare Fraud investigation as they heard rumor from former attorney who heard from former defendant, Mantell, that Booth was being investigated for Medicare Fraud for having "assistants" perform surgery, is also absurd.  Mantell denied making the statement.  Plaintiffs had no idea if there really was a Medicare Fraud investigation and what it involved if it did exist.  To plaintiffs, **"assistants" meant Bartolozzi performed the surgery.**  Defendants' own Motion for Summary Judgment, paragraph 3, specifically states: "Booth was **assisted** by co-defendant, Bartolozzi."  Plaintiffs contacted Medicare and Eastern District of Pennsylvania

19

who informed plaintiffs they knew nothing about a Medicare Fraud investigation versus Booth.  Indeed, the Medicare Fraud investigation was **sealed/confidential** prior to and during trial and thus **only defendants had access to same.**  The investigation remained sealed until August, 2001, when Department of Justice filed Medicare Fraud Complaint versus Booth, Appendix p. 64-67 & 69-82.

It is difficult to comprehend defendants' assertion that: **Somehow plaintiffs could have known about the Medicare Fraud investigation -- and not the defendants -- given the fact that investigation was under seal/confidential at the time and thus only defendant had access to same.**  In fact, defendants falsely represented in federal court that any reference to Medicare Fraud investigation was **"irrelevant"** to plaintiffs' case -- when defendants **knew that the Medicare Fraud investigation was pivotal to plaintiffs' battery claim.**

Plaintiffs could not oppose Motion in Limine to exclude any reference to Medicare Fraud investigation -- **as they did not have any access to any information to verify/confirm same**  Moreover, defendants were well aware of this and **knew** plaintiffs would have no access to information regarding Medicare Fraud investigation.  Plaintiffs justifiably relied on defendants false representations to plaintiffs and court -- and had no means to investigate or confirm.  Indeed, plaintiffs requested from U.S. Attorneys Office additional information regarding investigation but have been denied same as information, except Complaint and Agreements are deemed confidential, Appendix  86-87 (plaintiffs appealed).

Plaintiffs did not sit on their rights and immediately filed Motion to Set Aside Judgment in June, 2002 -- **even** before they obtained copies of Medicare Fraud Complaint/Agreements.  Further, plaintiffs filed independent action in this Court in March, 2004 -- **even** while the Appeal on Motion to Set Aside was pending in Third Circuit (opinion was not handed down until September, 2004).

Thus, in accordance with either New Jersey or Pennsylvania law, plaintiffs are well within statute of limitations for equitable and legal fraud. In fact, pursuant to the law, plaintiffs are entitled to both monetary damages for independent action for fraud and to set aside March, 2001 judgments for fraud based on R. 60(b). Damages, however, cannot be duplicate, see below.

**PRIOR ACTION**

In their brief, defendants use incorrect terminology. Defendants appear to be stating plaintiffs' prior Motion to Set Aside Judgments for Fraud in June, 2002 was a prior **lawsuit** and, thus they are precluded from relitigating the issue in the within Complaint. Plaintiffs agree that their Motion to Set Judgments for Fraud is **the same as the within Complaint for Equitable Fraud and Legal Fraud. Contrary to defendants' assertion, plaintiffs are, in accordance with the law, permitted to bring the within action for both equitable and legal fraud.** See below for R. 60 (b), Res Judicata and Standard for Fraud Arguments.

If defendants meant to say that plaintiffs first' lawsuit is the same as the within lawsuit -- then the defendants are erroneous. The first lawsuit was for medical malpractice, violation of informed consent, and battery, Appendix p. 90-113 Counts One and Two. Plaintiffs also alleged defendants committed fraud, Count Three, in that **defendants concealed the true nature of Cooney's injury.** That is, defendant, Booth, informed plaintiffs that Cooney suffered from a "blood clot" when he knew from vascular surgeon, Mantell, that Cooney suffered from a vascular injury (intimal flap) that occurred during knee replacement surgery, Appendix 56-59 - **Mantell states: "there was no blood clot."** During trial, defendants agreed to call vascular injury exactly that, ie. a "vascular injury." Thus, only medical malpractice/battery went to jury. The within case for fraud is based on defendants' failure to disclose information that was critical and pivotal to

21

plaintiffs case, ie., residents performing surgeries without presence of Booth.
Issue of fraud for failure to disclose this critical information has yet to be litigated.

## STANDARD FOR FRAUD

Legal fraud consists of (1) a material representation of a presently existing
or past fact, (2) made with knowledge of its falsity and (3) with the intention that
the other party rely thereon, and (4) reasonable reliance by that party (5) to his or
her detrimental.  Equitable fraud does not require proof of scienter, meaning
knowledge of the falsity of the representation and an intention that the other party
rely thereon (elements (2) and (3) above).  See, Jewish Center of Sussex County v.
Whale, 86 N.J. 619, 432 A.2d 521 (1981).

A party sues on a claim for legal fraud when money damages are sought
and on a claim for equitable fraud when equitable relief, such as relief from or to
set aside judgment, is sought.  In Batka v. Liberty Mutual Fire Ins. Co., 704 F.2d
684 (3rd Cir. 1983) and Armel v. Crewick, 71 N.J. Super. 213 (A.D. 1961), the
court held that a party must prove legal fraud by a preponderance of the evidence
and equitable fraud by clear and convincing evidence.  Although there is
somewhat conflicting case law in earlier cases, see eg, Connelly v. Weisfeld, 142
N.J. Eq. 406 (E & A 1948) (clear and convincing standard applied to equitable
fraud) versus Fischetteo Paper Mill Supply, Inc. v. Quigley Co., 3 N.J. 149 (1949)
(preponderance of evidence standard applied to legal fraud), New Jersey has long
recognized the distinction articulated in Armel, supra. See also, Pietrafessa,
Gianfranco, Burden of Proof for Legal Fraud Claim is Confused and Unsettled - A
Strong argument can be made that a mere preponderance of the evidence, and not
clear and convincing evidence, is required, New Jersey Law Journal, October 7,
2002, Vol. CLXX - No. 1-Index 28.  Nevertheless, plaintiffs prove both legal and
equitable fraud using and clear and convincing standard.

### *INDEPENDENT ACTION FOR LEGAL FRAUD*

The Third Circuit and Eastern District Court for Pennsylvania **only**
**addressed equitable fraud, ie. plaintiffs' Motion to Set Aside Judgment.** Thus,
plaintiffs in accordance with the law are **absolutely not precluded from bringing**
**an independent action for Legal Fraud and monetary damages as they are well**
**within statute of limitations for Legal Fraud,** see above and Res Judicata, below.
Further, there was no determination on the merits as to plaintiffs' Motion to Set
Aside Judgment for fraud and, therefore, res judicata does not apply. See Res
Judicata, below. Thus, in accordance with the law, plaintiffs may proceed with
both legal, similar to Medicare Fraud Complaint versus Booth, Appendix p. 69-82
which alleges not only violations of federal statutes but also common law fraud,
and may also proceed for equitable fraud versus defendants.

### *INDEPENDENT ACTION FOR EQUITABLE FRAUD/FRCP R. 60 (b).*

As stated, plaintiffs may proceed with action versus defendants for Legal
Fraud (monetary damages). Plaintiffs may also proceed with action versus
defendants for Equitable Fraud (independent action to set aside judgment pursuant
to F.R.C.P Rule 60 (b)). Damages, however, cannot be duplicative, see below.

F.R.C.P. Rule 60 (b) states (emphasis added):

> The court may relieve a party or his legal representative from a
> final judgment, order, or proceeding for the following reasons:
> ... (3) fraud (whether heretofore denominated intrinsic or extrinsic),
> misrepresentation, or other misconduct of an adverse party .... The
> motion shall be made within a reasonable time, and .... not more
> than one year after the judgment, order, or proceeding was entered
> or taken ....  **This rule does not limit the power of a court to**
> **entertain an independent action to relieve a party from**
> **judgment, order, or proceeding ... or to set aside a judgment**
> **for fraud upon the court.**

Thus, F.R.C.P. Rule 60 (b) specifically states that when the right to make a motion is lost by the expiration of time limits fixed in these rules -- then only other remedy is by **new or independent action to relieve/set aside a judgment.** Moreover, the Advisory Notes to said rule specifically state: **"which action may or may not be begun in the court which rendered the judgment."** (emphasis added). Thus, it is clear plaintiffs, in addition to action for legal fraud, may also commence independent action to set aside judgments for fraud and that action **may or may not** be commenced in the court that entered judgment. Thus, plaintiffs may proceed with the within action in the District Court for New Jersey.

The Advisory Notes specifically state that the amendments to the R. 60(b) made fraud an express ground for relief by motion, and under savings clause **fraud** may be urged as basis for relief by independent action. Id.   Also, under saving clause the court may set aside for **fraud on court.** Id.   However, **fraud and fraud on the court are thoroughly separate grounds for independent action, -- distinction is important, see Res Judicata, supra.**

On year limit on certain motions under R. 60 (b) is not applicable to an independent action to relieve a party from judgment -- leaving such independent action as the only manner of obtaining relief from a judgment in those cases where a motion under this rule has become time barred. See eg., Goland v. Central Intelligence Agency, 607 F.2d 339, 1978 U.S. App. LEXIS 11052 (1978); Carr v. District of Columbia, 646 F.2d 599, 1980 U.S. App. 11321 (1980).

In order for plaintiffs to prevail on an independent action for equitable fraud -- it must be extrinsic fraud. U.S. v. Throckmorton, 98 U.S. 61, 25 L.Ed. 93, 1878 U.S. Lexis 1362 (1878).  Extrinsic fraud is defined as:

> As applied to fraud, the term 'intrinsic' usually means that fraud
> was practiced in procuring the transaction, as distinguished from
> extrinsic fraud, which means that the fraud was practiced in the

24

> ***act of obtaining a judgment in the course of litigation involving
> the transaction.*** The latter is actual fraud, but collateral to the
> transaction in litigation. Extrinsic or collateral fraud is also
> defined as actual fraud, such that there is on the part of the person
> chargeable with it the malus animus (evil intention), since the
> mala mens (evil mind) puts itself in motion and acts in order to
> take an undue advantage of some other person for the purpose
> of actually and knowingly defrauding him.

23 American Jurisprudence 757, sec. 5 (emphasis added).

Based on the evidence, Statement of Undisputed Facts, there is no doubt
defendants intended to defraud plaintiffs as to true identity of the individual who
performed Cooney's surgery. Defendants fraudulently and purposefully concealed
critical pending Medicare Fraud investigation from plaintiffs -- as same established
a pattern for having residents perform surgeries without the presence of a surgeon.

Failure to disclose the pending Medicare Fraud investigation, which only
defendants had access to same, is without a doubt extrinsic fraud. This was not
merely perjury or false testimony (intrinsic fraud), but rather went to the heart of
plaintiffs' claims versus defendants and deprived them of opportunity to fairly
present their claims and deprived them of action versus another defendant -- the
individual who actually performed surgery. As <u>Throckmorton,</u> supra, states --
there is an admitted exception to the rule <u>**by reason of something done by the
successful party to a suit, there was in fact no adversary trial or decision of the
issue in the case. Where the unsuccessful party has been prevented from
exhibiting fully his case, by fraud or deception practiced on him by his
opponent -- this shows that there has never been a real contest in the trial of
the case, and is reason for which a new suit may be sustained to set aside
judgment.**</u> Thus, extrinsic fraud refers to those case where a party has been
prevented by the other party from fully presenting his claims or defending against
same.

25

In the case at bar, there is no doubt that the issue of whether a resident or individual unlicensed to perform surgery -- was never tried or presented to jury. Both plaintiffs and jury were fraudulently led to believe, based on all evidence including documents and trial testimony, see Mueller Certification, that defendant, Bartolozzi performed the surgery. Even Third Circuit noted same in its February 12, 2004 decision on jury battery charges, Appendix p. 46-52 (stating:Bartolozzi performed the bulk of the surgery). The consent form, Appendix p. 15-16, while identity of surgeon left blank, listed either Booth or Bartolozzi as possible surgeons. Thus, even though it was not in dispute that Booth had promised Cooney he would perform surgery, Appendix p. 19-20, the jury reasonably concluded that Cooney had consented to Bartolozzi performing the surgery and thus no battery. Had jury been aware of the pending Medicare Fraud investigation versus defendant Booth -- the outcome would have been different.

## RES JUDICATA

Res judicata does not apply to the case at bar. Res judicata is the generic term for various doctrines by which a judgment in one action has a binding effect in another -- it comprises both "claim preclusion" and "issue preclusion or "collateral estoppel." The district court decision denied plaintiffs' Motion to Set Aside Judgment for fraud based on untimeliness, ie, R. 60 (b) one year statute of limitations for motion. Further, the district court declined to even address the failure of defendants to disclose pending Medicare Fraud investigation, Appendix p. 9-10. The Third Circuit **solely** affirms the district court's denial of plaintiffs fraud motion based on untimeliness., Appendix p. 5-8. While the Third Circuit disagrees with district court's decision as to untimeliness of plaintiff' motion for fraud on court -- it simply finds fraud on court allegations to be "without merit,"

26

and does not provide further elaboration.  In the within complaint, plaintiffs only assert legal and equitable fraud and do not assert fraud on the court.

Under R. 60 (b) **if plaintiffs' motion to set aside judgment for fraud has expired, plaintiffs may bring an independent action for fraud as long as fraud is within statute of limitations,** see above -- plaintiffs' claims within statute of limitations.  Thus, the Third Circuit's decision as to fraud on the court being without merit -- is irrelevant to this matter as in accordance with the law plaintiffs may bring independent action for extrinsic fraud, within statute of limitations, see above.  Fraud and fraud on the court are two separate claims with two separate standards.  The basis for fraud on the court is more stringent then basis for extrinsic fraud.  Fraud on the court embraces only that species of fraud which subverts or attempts to subvert the integrity of the court itself or fraud perpetrated by officers of the court so that judicial machinery cannot perform in an impartial manner, see Hazel-Atlas Glass Co. v. Hartford Empire Co., 322 U.S. 238, 64 S.Ct. 997, 88 L.Ed 1250 (1944).   Similar to Hazel-Atlas, plaintiffs had alleged that defendants defrauded Medicare (patent office in Hazel-Atlas) and that same was done with complicity of counsel.  Pursuant to the Third Circuit decision, however, plaintiffs are precluded from alleging fraud on the court and have not pleaded same in their complaint. Plaintiffs are not precluded from asserting independent action for fraud as there was no prior determination regarding same and in order to have preclusive effect -- **there must be prior determination on the merits.**

New Jersey follows the Restatement of Judgments (Second) section 27 in determining preclusive effect. Arab African International Bank v. Jonathan I. Epstein, 958 F.2d 532, 1992 U.S. App. Lexis 3794 (3rd Cir.1992).  That is, there must be prior determination on the merits in order to have preclusive effect.  Since plaintiffs' motion was not determined on the merits by the Third Circuit but rather

27

solely affirmed district court's decision based on untimeliness, there is no doubt
that -- **the Third Circuit decision paves the way and does not preclude**
**plaintiffs' independent action for fraud to set aside judgment in accordance**
**with R. 60 (b).** Further, the district court did not even address plaintiffs'
allegations of failure to disclose Medicare Fraud investigation, Appendix p. 9-10.
Thus, Third Circuit could not rule on same.

Finally, comment o to section 27 of the Restatement of Judgments
(Second) addresses alternative determinations by court of first instance. While
district court denied plaintiffs' motion to set aside for fraud based on untimeliness,
it stated further commentary on matter, Appendix p. 9-10. Under the Restatement,
Comment o states that: "if the appellate court upholds one of the determinations as
sufficient and refuses to consider the other, the judgment is conclusive only as to
first determination." The Third Circuit only upheld the district court's decision to
deny plaintiffs' motion for fraud based on untimeliness. The Third Circuit **did not**
state affirmance for "substantially" the same reasons as district court but rather
limited affirmance solely on basis that Motion was untimely, see, Arab, supra.
Third Circuit decision was in total compliance with R. 60 (b) thereby providing
mechanism for independent action for fraud when motion for fraud statute of
limitations has expired. Pursuant to law, any further commentary by district court
-- has absolutely no preclusive effect on plaintiffs' independent action for fraud.

Further, the identity of individual who actually performed Cooney's surgery
has been fraudulently concealed from the plaintiffs. The courts have held that "res
judicata does not apply when the evidence was either fraudulently concealed or it
could not have been discovered with due diligence," L-Tec Electronics Corp v.
Cougar Electronic Organization, Inc., 1988 F.3d 85, 88 (2nd Cir. 1998) (citations
omitted). Since the Medicare Fraud investigation was **confidential/under seal**,

only defendants had access to same and, therefore, plaintiffs could never, no matter how much due diligence, uncovered the Medicare Fraud investigation.

## ELEMENTS OF FRAUD (Legal and Equitable)

The issue of intent in a fraud case is rarely susceptible of direct proof. Therefore, fraud ordinarily must be established by circumstantial evidence and the legitimate inferences arising therefrom. Circumstantial evidence is not only sufficient, but in most cases it is the only proof that can be adduced. U.S. v. Panza, supra; Goshen Litho Inc. v. Kohls, supra.

Recent decisions in securities case have placed emphasis on the failure to disclose pending Medicare Fraud investigation and that same amounts to fraud. In Rosen v. Communication Services Group, Inc., 155 F.Supp. 310, 2001 U.S. Dist. LEXIS 5706 (2001), plaintiffs alleged that they were defrauded when they agreed to sell stock in exchange for cash and secured debentures that were convertible to common stock of Universal Teleservices Network Corporation ("UTN"). UTN was owned by a physician who was, at the time, the target of government investigation arising out of a sealed qui tam suit filed under the False Claims Act relating to an entirely different company in which the physician had an interest. Plaintiffs alleged defendant physician failed to disclose that he was the subject of a sealed qui tam complaint and under investigation by the Federal government. Plaintiffs alleged they became aware of these facts only after sale of their stock was completed and asserted if defendants had timely disclosed this investigation -- they would not have sold their stock. The court held that failing to disclose Justice Department investigation could have significantly influenced plaintiffs decision to sell their stock, and, thus action for fraud could be maintained. Appendix 83-85.

In McCall v. Scott, 239 F.3d 808, 2001 U.S. App. LEXIS 2064, denial of rehearing 250 F.3d 997, 2001 U.S. App. LEXIS 17643 (6th Cir. 2001), the Sixth

29

Circuit reinstated a derivative action that was filed against directors of
Columbia/HCA, after Columbia's stock price declined significantly in the wake of
news that Columbia was under investigation for alleged Medicare Fraud.  The
Sixth Circuit concluded that the Columbia Board's purported inaction in the face
of alleged "red flags" of potential fraud was sufficient to allow the shareholder suit
to move forward.  One of those alleged "red flags" was a qui tam suit in which **the
Department of Justice (DOJ) had declined to intervene.**  Appendix p.83-85.

Here, the DOJ did indeed bring action versus defendants after investigation.
The Medicare Fraud complaint and settlement agreement were filed in August,
2001.  Further, while <u>Rosen</u> and <u>McCall</u>, supra, apply to fraudulently concealed
Medicare Fraud in securities cases -- the courts' reasoning can be analogized to the
within case.  In fact, after discovering Tenet Hospital and physicians **were being
investigated for Medicare Fraud** for performing unnecessary surgeries, hundreds
of patients sued Hospital and physicians for **battery and fraud,**  Appendix p.60.
See, <u>Perna v. Pirozzi,</u> 92 N.J. 446, 457 A.2d 431, 1983 N.J. Lexis 2354 (1983)
(unnecessary surgeries as well as unauthorized individuals performing surgery are
considered battery).  While Tenet Hospital has settled with patients, hundreds of
actions are still pending versus the physicians, Appendix p. 61.  **There is nothing
more important then the trust given one's surgeon.  That is, the fiduciary
relationship between surgeon and patient is of the utmost importance.**

### *SUMMARY OF FACTS*

Defendants falsely and fraudulently led plaintiffs and jury (first trial) to
believe that Bartolozzi had performed Cooney's surgery.  Defendants fraudulently,
purposefully and deliberately concealed the pending Medicare Fraud investigation
versus Booth plaintiffs.  Further, defendants knew that the pending Medicare

Fraud investigation versus Booth for having residents perform surgery without the presence of Booth **was critical to plaintiffs' battery claim.**

Booth promised Cooney that he would personally perform Cooney's surgery, Appendix 19-20.  All documents including Intraoperative Report, Operating Schedule, Medicare bill, resident McHugh's notes designate Bartolozzi as surgeon, Appendix p. 1,2,11-12, 44-45.  Nevertheless, Booth testified in deposition that he was present for Cooney's surgery, Appendix 53-55. Bartolozzi's deposition states that he (Bartolozzi) did not participate in any portion of Cooney's surgery except for beginning and end and that Booth's responsibility was for **all portions** of knee replacement surgery including soft tissue, ligament balancing cutting of the bone, trial prosthesis and placement of permanent prosthesis, Appendix p.17-18.  Bartolozzi was dismissed by trial court.

At trial, Booth changed his testimony from deposition and testified  that Bartolozzi was surgeon, Appendix p.31a, that Bartolozzi was his expert and "gift" regarding soft tissue and ligament balancing, that he (Booth) no longer performed this aspect (soft tissue and ligament balancing) of the surgery,  and that soft tissue and ligament balancing was the most crucial part of the surgery, Appendix 21-25.

Booth went on to testify that he entered Cooney's surgery after the soft tissue and ligament balancing portion of surgery were completed, and that he "moved McHugh" out of the way and assisted Bartolozzi in "cutting of bone," and that he (Booth) left as permanent prosthesis was being placed. Appendix  26-27, 30.

Resident, McHugh, denied performing surgery and testified he could not recall who performed surgery. McHugh notes reflect Bartolozzi as surgeon, Appendix p. 37-45. **There were no other defendants presented to plaintiffs by defendants regarding plaintiffs' action.**

31

Based on the evidence, plaintiffs alleged Booth committed battery in that he authorized another surgeon (Bartolozzi) to perform Cooney's surgery, Grabowski, supra.  While consent form left identity of surgeon blank, it listed both Booth and Bartolozzi as possible surgeons for Cooney, Appendix 15-16. Thus, jury, based on fraudulent documents, testimony, and defendants failure to disclose pending Medicare Fraud investigation, concluded Cooney consented to Bartolozzi performing surgery.  Consent form, however, **did not authorize residents, or other individuals unlicensed to perform surgery, to perform Cooney's surgery.**

In their brief, defendants assert plaintiffs knew Booth was being investigated for Medicare Fraud. **It is, however, difficult to comprehend defendants' assertion that somehow plaintiffs were supposed to have access to United States Department of Justice/Office of Inspector General investigation versus Booth and yet defendants knew nothing about it!**  Booth lied in deposition as to any pending federal actions, Appendix p. 55, see 18 U.S.C. 1621, 1623 (intent for perjury expanded to include mere knowledge testimony is false). Defendants falsely represented in Motion in Limine that any Medicare Fraud investigation was "irrelevant" to plaintiffs' case, Appendix p. 32-36.  Defendants did not disclose any other surgeons other than Booth or Bartolozzi during discovery, and any reasonable person would believe that **a surgeon had performed Cooney's surgery, see below**.  Since the pending Medicare Fraud investigation was **confidential/sealed at the time of plaintiffs' trial,** plaintiffs could not possibly investigate same -- only defendants had access to this information.  It was not until June, 2002, that plaintiffs became aware of Medicare Fraud Complaint that was filed in August, 2001-- months after Cooney trial.

The Medicare Fraud complaint alleges: "residents were performing surgeries without the presence of surgeon," and that there were **no surgeon's notes**

for those surgeries performed without presence of surgeon, Appendix p. 69-82.
Pursuant to federal regulations, when there are overlapping multiple surgeries,
surgeon's presence for critical portions of surgery must be **personally documented
in medical record.** Further, surgeon cannot leave procedure to commence another
procedure without being immediately available to return to former procedure,
Appendix 69-82, 42 C.P.R. 415.170, et seq.

Here, the first operating schedule shows there were **twenty-six** (26)
surgeries scheduled for February 26, 1998 (some were double knee replacements),
Appendix p.2 (Cooney's ID # 782873). Bartolozzi is designated as surgeon.
Defendants have admitted **there are no surgeon's notes for Cooney or anyone
else on February 26, 1998,** Appendix p. 4. There is absolutely nothing in record
personally documenting presence of Booth/Bartolozzi in Cooney's operating room.

The second operating schedule, Appendix p. 3., demonstrates there were
overlapping and multiple surgeries scheduled for February 26, 1998. Booth claims
in his deposition that he left Cooney surgery to commence another surgery,
Appendix p.54. Further, since Bartolozzi did not perform Cooney's surgery and
testifies that Booth is responsible for all portions of knee replacement surgery -- **it
is clear that Booth had to perform 17 multiple/overlapping surgeries -- that is
all of those surgeries designated with his name and all of those surgeries
designated Bartolozzi, Appendix p. 2.** The redacted Intraopertive for top portion
of all surgeries performed on February 26, 1998 will show surgeon, first assistant,
time surgery commenced and time surgery concluded. Permission to supplement
record when receive Protective Order from this Court has been requested.

The Operating Report, Appendix p 13-14, is not personal documentation of
surgeon's presence during critical portions of surgeon but rather, as testified by
Booth, the Operating Report is simply a "**computer generated -- form template**

that is the same for each patient -- unless there is a problem, Appendix p. 53.
Cooney Operating Report shows only average blood loss, ie 50 cc, as opposed to
actual blood loss on February 26, 1998 in amount of 2500 cc, Appendix 56.

**All evidence** falsely reflected Bartolozzi had performed Cooney's surgery
and there were **no other possible surgeon defendants disclosed to plaintiffs**
**during discovery other than Booth and Bartolozzi.**  Based on defendants' false
representations and failure to disclose pending Medicare Fraud investigation,
plaintiffs voluntarily dismissed First Assistant, resident, McHugh. Had defendants
not fraudulently concealed the critical and relevant pending Medicare Fraud
investigation versus Booth for having residents perform surgeries without presence
of Booth,  plaintiffs would not have dismissed resident McHugh.  Further, had jury
been aware that a resident/other individual unlicensed to perform surgery had
performed Cooney's surgery -- the outcome would have been different as consent
form, Appendix p. 15-16, did not authorize resident or individual unlicensed to
perform surgery -- to perform Cooney's knee replacement surgery.

### *ELEMENTS OF FRAUD*

Fraud requires (1) material representation of a past or present fact; (2)
knowledge by the defendant of its falsity; (3) intention that it be relied upon; (4)
reasonable reliance by the other person; and (5) resulting damages, Jewish Center
of Sussex County, supra.

#### *(1) Material*

Under New Jersey law, relationship giving rise to duty to disclose include
fiduciary relationships where one party expressly reposits trust in another party
and where good faith and common decency require it. Salvaara v. Jackson Nat.
Life Ins. Co., 66 F. Supp.2d 593 (D.C.N.J. 1999); City Check Cashing, Inc. v.
Manufacturers Hanover Trust, 166 N.J. 49, 764 A.2d 411 (2001).  There is no

Super. 128, 109 A.2d 457 (A.D. 1954), cert. granted 17 N.J. 407, 111 A.2d 547, affirmed 19 N.J. 14, 114 A.2d 857 (1954).

There is no doubt that it was reasonable for plaintiffs (or anyone else) to rely on fact that a **surgeon** would perform Cooney's surgery. Moreover, no other surgeon defendants other than Booth or Bartolozzi were disclosed by defendants. As to rumor plaintiffs heard regarding Medicare Fraud. Mantell denied stating same. Plaintiffs had no idea as what the Medicare Fraud investigation involved. Plaintiffs were informed by Medicare and Eastern District of Pennsylvania that they had no knowledge of pending Medicare Fraud investigation, and **plaintiffs could never confirm the pending Medicare Fraud investigation as was under seal/confidential and only defendants had access to same.** Further, it was reasonable to believe "assistants" meant Bartolozzi. In fact, in defendants' Motion, paragraph 3, it is stated: "Booth was **assisted** by co-defendant, Bartolozzi. It was reasonable to rely on Motion in Limine representations that any possible Medicare Fraud investigation was "**irrelevant**" to plaintiffs' case as said representations were made in federal court. Except for Medicare Fraud complaint/agreements, remains under seal, Appendix p. 86-87, unless defendants consent to release.

### (3) Knowledge and (4) Intent

Only defendants had knowledge of pending Medicare Fraud investigation as Booth was subject of investigation. The failure to disclose same to plaintiffs was not only intentional but constituted a well orchestrated plan.

The Medicare Fraud investigation commenced in April, 1997 and covered period at Pennsylvania Hospital from January, 1995 to June, 1997, Appendix 69-82. Defendants moved from Pennsylvania Hospital to Graduate Hospital in July, 1997 and thus no further investigation occurred following move, defendants' Appendix Philadelphia Business Journal (defendants moved back to Pennsylvania

36

in 1998).  Had the Office of Inspector General known about Cooney matter -- the investigation would have continued into Graduate Hospital.  Thus, intent in fraudulently failing to disclose pending Medicare Fraud investigation was two fold -- (1) defeat plaintiffs and (2) prevent further investigation into Graduate Hospital.

Moreover, defendants could not settle with Medicare while Cooney case was pending as same would "unseal" the matter in terms of the Complaint being filed in district court, see Federal False Claims Act.  Indeed, defendants did not settle with Medicare until August, 2001 -- months after Cooney case decided.

At Graduate Hospital, the new plan devised by defendants was to have a fictitious surgeon listed as surgeon of record for each patient.  That is, list Bartolozzi as surgeon -- but Bartolozzi did not actually perform the surgery.  Thus, requirement of documentation, ie. surgeon's notes, would be falsely circumvented.  The plan went further, however, when Cooney individual action was brought.

Now, while all documents reflected Bartolozzi as surgeon, Booth would testify at deposition that he was present during Cooney surgery -- thus defeating plaintiffs' battery claim (Booth promised to perform surgery and did not).  Bartolozzi would testify at deposition that he did not perform Cooney's surgery and that Booth was responsible for all portions of knee replacement surgery.  Bartolozzi would thus be dismissed via Motion for Summary Judgment.  At trial, however, Booth changes his testimony and testifies that Bartolozzi was surgeon, that Bartolozzi was his expert in soft tissue and ligament balancing, that he (Booth) no longer performed this aspect of surgery, that he (Booth) entered Cooney's surgery after soft tissue and ligament balancing had been performed, that he "assisted" Bartolozzi with the "bone cutting," and that he left when permanent prosthesis was being placed, see above.

37

Defendants **knew** plaintiffs would be **pleased** to hear Booth's testimony --
**as now established battery in that Booth did not perform Cooney's surgery, as
promised, but rather Bartolozzi performed surgery,** (See, Grabowski v.
Quigley, 454 Pa. Super. 27, 684 A.2d 610 (1996), appeal dismissed, 717 A.2d
1024 (Pa. 1998) (surgeon who authorizes another surgeon to perform surgery is
liable for battery)). Booth's testimony now correlated with all medical records
designating Bartolozzi as surgeon (Intraoperative Report, Operating Schedule,
Medicare Bill, see above).  Plaintiffs could then go forward with battery claim.
Defendants **knew**, however, despite fact Booth had promised to perform surgery,
consent form, while leaving identity of surgeon blank, authorized Booth/Bartolozzi
to perform surgery and was specifically designed that way to defeat battery claim.

Resident, McHugh, deposition testimony was he (McHugh) did not perform
Cooney's surgery and that he could not recall who performed Cooney's surgery.
Defendants **knew** that plaintiffs could never investigate or confirm pending
Medicare Fraud investigation.  Defendants **knew** plaintiffs had no choice but to
dismiss McHugh -- besides all documents reflected Bartolozzi performed surgery.

Not only did defendants' plan defeat plaintiffs' battery claim- it also defeated
medical malpractice claim for vascular injury during knee replacement surgery as
surgeon of record (Bartolozzi) was dismissed from case.  Plaintiffs proceeded with
battery and lesser medical malpractice (failure to test for pre-existing condition).

Based on the evidence, there is no doubt defendants' had knowledge of
pending Medicare Fraud investigation and intended to defraud plaintiffs.  Plan was
well orchestrated. Defendants, however, did not count on plaintiffs' perseverance
in ascertaining the truth.

**(5) Damages**

Damages for equitable fraud, set aside original judgments and proceed with new trial for medical malpractice and/or battery, would be compensatory damages for pain and suffering of Cooney, wrongful death, economic loss, etc and compensatory and punitive damages for battery. Damages, of course, cannot be duplicative. The measure of damages for legal fraud is not the nature and extent of the injuries arising from the underlying tort claim, but rather the nature and extent of the damages caused by defrauding the plaintiffs. DiSabatino v. United States Fidelity and Guaranty Company, 635 F. Supp. 350 (D.C.Del. 1986), Roth v. La Societe Anonyme, 2003 Mo. Ap. Lexis 1562, 120 S.W.3d 764 (W.D. Mo. 2003).

Under legal fraud, plaintiffs are entitled to compensatory damages including economic loss, emotional distress, attorney fees, costs, Hagen v. Gallerano, 66 N.J. Super. 319, 169 A.2d 186 (A.D. 1961), and punitive damages. It is especially fitting to allow punitive damages for actions such as legal fraud, since intent rather than mere negligence is requisite state of mind. Even if plaintiffs cannot establish compensatory damages, they are entitled to punitive damages. Nappe v. Anschelewitz, 97 N.J. 37, 1984 N.J. Lexis 2682 (1984). In Nappe, the Court held compensatory damages are not an essential element of an intentional tort committed willfully, without justification, when there is some loss, or injury, and nominal damages may be awarded in absence of compensatory damages.

## IV. CONCLUSION

For all the foregoing reasons, it is respectfully requested that Plaintiffs' Motion for Summary Judgment be granted and defendants' Motion denied.

Respectfully submitted,

Helen E. Cooney Mueller (HCM 4226)
Dated: August 23, 2005          Attorney for Plaintiffs
11 Susan Ave, Wayne, N.J. 07470
(973) 633-8021- helenelmueller@yahoo.com

39